**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA |
| v. |
| OMAR ARANA, |
| Defendant. |

Criminal Action No. 23-73-21 (CKK)

**MEMORANDUM OPINION**
(November 20, 2023)

Defendant Omar Arana is charged by indictment with conspiring to distribute, with others, thousands of counterfeit pills of fentanyl. On November 16, 2023, Magistrate Judge Maria Audero of the United States District Court for the Central District of California ordered Defendant to be released with conditions pending trial. Minutes of Arrest On Out of District Warrant, ECF No. 5, *United States v. Arana*, Case No. 23-mj-5938. Magistrate Judge Audero initially stayed the detention order until 6:00 p.m. PT, November 17, 2023, before extending the stay until 12:00 p.m. PT, today. *Id.*

Before the Court is the Government's [156] Emergency Motion for *De Novo* Review of Magistrate's Release Order and Request to Stay Defendants' Release Pending *De Novo* Review. The Government requests that the Court vacate the detention order and order Defendant detained pending trial, or, in the alternative, stay the detention order pending the conclusion of the *de novo* review process. The Government moves on an emergency basis on account of the limited stay issued in this matter. Upon consideration of the pleadings,[1] the relevant legal authority, and the

---

[1] The Court's consideration has focused on:
- Minutes of Arrest On Out of District Warrant, ECF No. 5, *United States v. Arana*, Case No. 23-mj-5938;
- The Government's Emergency Motion for *De Novo* Review of Magistrate's Release Order and Request to Stay Defendants' Release Pending *De Novo* Review, ECF No. 156

1

record before the Court, the Court shall **GRANT** the Government's Motion, **VACATE** the prior release order, and order Defendant held without bond pending trial and transported **forthwith** to the District of Columbia.

## I. BACKGROUND

The factual record thus far is underdeveloped. There is no opinion, memorandum, or statement of reasons attached to the Magistrate Judge's detention order, and the Court has access only to an audio recording of Defendant's detention hearing. There, Magistrate Judge Audero's finding appeared to be based on Defendant's limited criminal history. In an exercise of its discretion, the Court will rule definitively upon the record presently before it, sparse as it is. *See United States v. Sheffield*, 799 F. Supp. 2d 18, 29 (D.D.C. 2011) (BAH) ("The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons.") (cleaned up). As discussed further below, to the extent newly-appointed local defense counsel discovers additional evidence or develops further argument after consultation with his client, the Court welcomes motions for reconsideration, which the Court would review "as justice requires." *See United States v. Caldwell*, Crim. A. No. 21-181 (CKK), 2022 WL 168343, at *5 (D.D.C. Jan. 19, 2022). The Court makes this determination based on the Government's exceptionally strong showing here of danger to the community and risk of flight.

**A. Procedural Background**

On March 9, 2023, the Government filed an indictment against Defendants Hector David

---

("Motion" or "Mot.") and exhibits therein;
- Defendant Arana's Opposition to the Government's Emergency Motion, ECF No. 164 ("Def.'s Opp'n"); and
- An audio recording of the detention hearing in *United States v. Arana*, Case No. 23-mj-5938 (C.D. Cal. Nov. 16, 2023).

Valdez, Craig Eastman, and Charles Jeffrey Taylor. ECF No. 1 at 1. Additional defendants were indicted on April 26 and May 18, 2023. *See* ECF No. 25 (first superseding indictment); ECF No. 48 (second superseding indictment). On November 6, 2023, a grand jury returned a third superseding indictment, adding, among others, Defendant Arana. ECF No. 134 (sealed). Magistrate Judge Robin M. Meriweather of this jurisdiction then issued an arrest warrant for Defendant, which appears to have been executed in or around Los Angeles, California on or about November 16, 2023. Affidavit Re Out-of-District Warrant, ECF No. 1, *United States v. Arana*, Case No. 23-mj-5938. Counsel was appointed in that jurisdiction for the purposes of a detention hearing later that day. *See* Minutes of Arrest on Out of District Warrant, ECF No. 5, *United States v. Arana*, Case No. 23-mj-5938 ("Carlos N Iriarte for Omar Arana, Appointed, present."). Defendant appeared before Magistrate Judge Audero the evening of November 16, 2023. It appears from the audio recording of the detention hearing that Magistrate Judge Audero concluded that Defendant overcome the rebuttable presumption of detention given his limited criminal history. Magistrate Judge Audero initially stayed the detention order until 3:00 p.m. PT, November 17, 2023, to afford the Government an opportunity to appeal to this Court. Magistrate Judge Audero then extended the stay until 12:00 p.m. PT, today.

The Government filed its emergency Motion the morning of November 17, 2023. ECF No. 156. The Court then secured local counsel for Defendant in this jurisdiction, and ordered responsive briefing by 12:00 p.m. ET today, November 20, 2023. Local counsel for Defendant notes that he has been unable to contact Defendant, and the limited representations contained in Defendant's opposition to the Government's motion is based on information provided by Defendant's family and counsel's own review of the related documents. Def.'s Opp'n at 1 n. 1.

**B. Factual Allegations**

Notably, the Government presented few allegations to the Magistrate Judge during Defendant's detention hearing. The Government has remedied that here, detailing the allegations against Defendant, posts and messages from his social media accounts, and large quantities of drugs seized through searches of Defendant's residence. Broadly, the Government alleges that Defendant dealt in vast amounts of counterfeit fentanyl smuggled into the United States, sold those quantities to distributors, including co-Defendants Valdez and Nava, who later sold them to street-level dealers throughout the United States, including various co-defendants. *See* Mot. at 4–11. A search of Defendant's residence in California uncovered a duffle bag "containing several hundred suspected fentanyl pills." *Id.* at 21. According to the Drug Enforcement Agency, approximately two milligrams of fentanyl can constitute a lethal dose. DEA, *Facts About Fentanyl*, *available at* https://www.dea.gov/resources/facts-about-fentanyl (last accessed Nov. 17, 2023). Therefore, the Government alleges that the search uncovered "tens of thousands, if not more, of lethal fentanyl pills." *Id.* at 26.

The Government alleges that a search of Defendant's social media account "illustrates his redistribution of fentanyl pills by the thousands." *Id.* at 13. According to the Government, the below images were found "in the returns of [Defendant's] account," corroborating Defendant's illicit dealing in vast quantities of lethal drugs. *Id.* The picture on the left depicts hundreds (if not thousands) of blue pills marked with the letter "M" on one side and the number "30" on the other side, which, the Government proffers, is consistent with "counterfeit oxycodone pills containing fentanyl." *Id.* The picture in the middle depicts a close-up of these pills. Finally, the picture on the right shows various pills in prescription bottles with the phrase "#NOTFORSELL," which the Government states is commonly used by drug traffickers in an attempt to "disclaim their obvious intent to distribute drugs pictured on their social media accounts." *Id.*

4



*See generally id.* The Government further recounts numerous purported social media messages between Defendant and co-Defendant Nava, appending images from a social media account that corroborates its claim that Defendant, among others, dealt in vast quantities in illicit drugs. *See id.* at 14–19. For instance, on September 3, 2022, Defendant wrote to Nava, "just shoot the boat back." *Id.* at 14. A "boat" is a street term for 1,000 pills. *Id.* Following a series of missed calls, Defendant then writes to Nava, "U not trying to answer my call and communicate just it […] back and we gucci [i.e., we're OK]." *Id.* Days later, Defendant again writes to Nava, stating, "Wasup with my bread [i.e., money] my n****," "Shopy me .50 cents, " "And we good already." *Id.* The Government claims that this conversation demonstrates that Nava owed Defendant money, and Defendant suggested either getting back the pills or getting the money he owed. *Id.*

```
Author  __frogz (Instagram: 45425700909)
Sent    2022-09-06 00:10:15 UTC
Body    How much time do you need for the 2 pri?

Author  __frogz (Instagram: 45425700909)
Sent    2022-09-06 01:51:24 UTC
Body    __frogz started a video chat

Author  __frogz (Instagram: 45425700909)
Sent    2022-09-06 01:52:24 UTC
Body    You missed a video chat

Author  __frogz (Instagram: 45425700909)
Sent    2022-09-06 05:03:44 UTC
Body    __frogz started an audio call

Author  __frogz (Instagram: 45425700909)
Sent    2022-09-06 05:04:37 UTC
Body    You missed an audio call

Author  __frogz (Instagram: 45425700909)
Sent    2022-09-06 05:10:38 UTC
Body    Just shoot the boat back my g

Author  __frogz (Instagram: 45425700909)
Sent    2022-09-06 05:11:23 UTC
Body    Simple as that

Author  __frogz (Instagram: 45425700909)
Sent    2022-09-06 05:12:47 UTC
Body    U not trying to answer my call and communicate just shoot it back
        and we gucci

Author  __frogz (Instagram: 45425700909)
Sent    2022-09-10 00:59:21 UTC
Body    Wasup with my bread my n

Author  __frogz (Instagram: 45425700909)
Sent    2022-09-10 00:59:38 UTC
Body    Shoot me .50 cents

Author  __frogz (Instagram: 45425700909)
Sent    2022-09-10 00:59:47 UTC
Body    And we good already
```

*See id.* Similarly, on November 10, 2022, Nava asked Defendant for "30 boats"—i.e., 30,000 counterfeit pills. *Id.* at 15. Defendant stated that he could obtain the pills, but needed time. *Id.* Nava responded, stating that he needed the pills immediately because he had a customer who was ready to pay in cash. *Id.* Defendant said the customer would have to wait. *Id.*

```
Author  _glry_bxy_ (Instagram: 241344701)
Sent    2022-10-10 20:03:41 UTC
Body    You can't get me 30 boats for me ?

Author  __frogz (Instagram: 45425700909)
Sent    2022-10-10 20:04:21 UTC
Body    Yeah i get home in the night if your down im in arizona rn

Author  _glry_bxy_ (Instagram: 241344701)
Sent    2022-10-10 20:04:53 UTC
Body    Fuhh I kinda needed it rn

Author  _glry_bxy_ (Instagram: 241344701)
Sent    2022-10-10 20:05:00 UTC
Body    They're cash ready

Author  __frogz (Instagram: 45425700909)
Sent    2022-10-10 20:05:22 UTC
Body    Oh okay

Author  __frogz (Instagram: 45425700909)
Sent    2022-10-10 20:05:29 UTC
Body    Yeah pri im down in the night

Author  __frogz (Instagram: 45425700909)
Sent    2022-10-10 20:05:37 UTC
Body    If they can wait

Author  _glry_bxy_ (Instagram: 241344701)
Sent    2022-10-10 20:05:43 UTC
Body    I'll try seeing wassup

Author  __frogz (Instagram: 45425700909)
Sent    2022-10-10 20:05:52 UTC
Body    Okay bet
```

*See id.* at 16. The next day, on November 11, 2022, Defendant asked Nava if he could pay Defendant $0.60 per pill for 30,000 pills. *Id.* at 17. Nava stated that his customers want $20,000 at $0.55 per pill. *Id.* Defendant said he would see if he could get the pills for $.50 per pill so that Nava's buyers could pay $0.55 per pill and Defendant could keep a profit of $0.05 per pill (for a total of $1,000). *Id.* Nava stated that his buyer(s) has cash and is ready to purchase, and Defendant ultimately obtains the pills.

```
Author  __frogz (Instagram: 45425700909)
Sent    2022-10-11 17:59:25 UTC
Body    Just woke up pri

Author  __frogz (Instagram: 45425700909)
Sent    2022-10-11 18:00:01 UTC
Body    Can u do .60 for tha 30 pri?

Author  _glry_bxy_ (Instagram: 241344701)
Sent    2022-10-11 18:01:27 UTC
Body    They want 20 and they needed them at .55 pri, I'd ask for them for
        .50 so I can eat too but Ik that's low , so if you can do the .55 that's
        all you guys and I think my homie will shoot me 500

Author  __frogz (Instagram: 45425700909)
Sent    2022-10-11 18:18:09 UTC
Body    Okay let me see if I can get em @ .50 so I can eat .5 at least but ur
        boy fersure?

Author  __frogz (Instagram: 45425700909)
Sent    2022-10-11 18:18:16 UTC
Body    Paper ready?

Author  _glry_bxy_ (Instagram: 241344701)
Sent    2022-10-11 18:18:27 UTC
Body    Yes paper ready

Author  __frogz (Instagram: 45425700909)
Sent    2022-10-11 19:35:09 UTC
Body    Yo lets make it happen

Author  __frogz (Instagram: 45425700909)
Sent    2022-10-11 19:37:37 UTC
Body    ???

Author  __frogz (Instagram: 45425700909)
Sent    2022-10-11 19:37:42 UTC
Body    Got em
```

*Id.* Moreover, the Government alleges, and appends additional images to corroborate its claim, that Defendant knew he was trafficking in fentanyl. On November 4, 2022, Nava orchestrated a sale in which Defendant sold fentanyl to co-Defendant Valdez. *See id.* at 18. Nava wants the pills from Defendant at $0.50 per pill so that Valdez can pay $0.55 per pill. Nava also inquires if Defendant "break[s] down the fetty," i.e., whether Defendant cuts the fentanyl with cutting agents. *Id.* Defendant responded, stating he will complete the sale with his supplier. *Id.*

```
Author    __frogz (Instagram: 45425700909)
Sent      2022-11-04 18:23:39 UTC
Body      Same foo?

Author    __frogz (Instagram: 45425700909)
Sent      2022-11-04 18:23:43 UTC
Body      Grove?

Author    _glry_bxy_ (Instagram: 241344701)
Sent      2022-11-04 18:23:58 UTC
Body      It's my boy lil curl

Author    __frogz (Instagram: 45425700909)
Sent      2022-11-04 18:24:28 UTC
Body      Bet he legit?

Author    _glry_bxy_ (Instagram: 241344701)
Sent      2022-11-04 18:26:17 UTC
Body      Yes made a playing with him the last with chinos people but I
          rather go thru you if you can give them to me in at .50 cause he
          wants then at .55

Author    __frogz (Instagram: 45425700909)
Sent      2022-11-04 18:26:35 UTC
Body      Ok bet

Author    _glry_bxy_ (Instagram: 241344701)
Sent      2022-11-04 18:29:02 UTC
Body      Bet 🫡

Author    _glry_bxy_ (Instagram: 241344701)
Sent      2022-11-04 18:38:51 UTC
Body      Do you break down the fetty ?

Author    _glry_bxy_ (Instagram: 241344701)
Sent      2022-11-04 18:47:11 UTC
Body      He said Sundays the plays

Author    _glry_bxy_ (Instagram: 241344701)
Sent      2022-11-04 18:47:26 UTC
Body      Play

Author    __frogz (Instagram: 45425700909)
Sent      2022-11-04 19:32:45 UTC
Body      No pri

Author    __frogz (Instagram: 45425700909)
Sent      2022-11-04 19:35:04 UTC
Body      Okay pri im about to pull up on my boy thats gonna bless me with
          that ticket so if he lags just make sure to let us know with time so i
          wont look like a liar with these ppl

Author    _glry_bxy_ (Instagram: 241344701)
Sent      2022-11-04 19:35:36 UTC
Body      Sounds good pri
```

*See id.*  And, on October 26, 2022, Nava tells Defendant he wants fentanyl ("fetty"), and Defendant responds, "Oh fettys yeah." *Id.* at 19.

```
Author    _glry_bxy_ (Instagram: 241344701)
Sent      2022-10-26 00:00:54 UTC
Body      Is it 750 or which one

Author    __frogz (Instagram: 45425700909)
Sent      2022-10-26 00:17:09 UTC
Body      What u mean 750 pri?

Author    __frogz (Instagram: 45425700909)
Sent      2022-10-26 00:17:17 UTC
Body      U looking for bird right

Author    _glry_bxy_ (Instagram: 241344701)
Sent      2022-10-26 00:17:25 UTC
Body      Fetty pri

Author    __frogz (Instagram: 45425700909)
Sent      2022-10-26 00:17:46 UTC
Body      Oh fettys yeah
```

*See id.*

9

## II. LEGAL STANDARD

The Government may file "a motion for revocation of the order" with "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(a). The Court applies *de novo* review to the question and is "free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *Sheffield*, 799 F. Supp. 2d at 20 (quoting *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009)). "The motion shall be determined promptly." 18 U.S.C. § 3145(a).

In our society, "liberty is the norm" and "detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act permits pretrial detention in only "carefully defined circumstances." *United States v. Simpkins*, 826 F.2d 94, 95–96 (D.C. Cir. 1987). A detention hearing must be held only if a case involves any of an enumerated set of offenses, including an offense "for which a maximum term of imprisonment of ten years or more is prescribed in[, *inter alia*,] the Controlled Substances Act," 18 U.S.C. § 3142(f)(1)(C), or if the defendant poses a serious risk of flight or of trying to obstruct justice or threaten, injure, or intimidate a witness or juror, *id.* § 3142(f)(2)(A)–(B).

The question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). In determining whether a defendant should be detained pending trial, the Court must consider "the available information" concerning four enumerated factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and

seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *United States v. Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)). That standard requires the Government to establish that the defendant "poses a concrete, prospective threat to public safety" that cannot be sufficiently mitigated by release conditions. *Id.* at 1280; *see also Salerno*, 481 U.S. at 751 (requiring the Government to "prove[ ] by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community"). "Detention cannot be based on a finding that defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise[,] the scope of detention would extend beyond the limits set by Congress." *Munchel*, 991 F.3d at 1283.

### III.  DISCUSSION

Despite the rather underdeveloped record, the Court concludes that the evidence presented by the Government in its briefing clearly requires Defendant's detention pending trial. That said, the Court acknowledges that counsel for Defendant has had little opportunity to develop the factual record on behalf of his client given his recent appointment and the expedited briefing schedule. If counsel discovers evidence or develops legal arguments that he was not able to present in the instant briefing, the Court encourages defense counsel to move for reconsideration.

**A. Legal Principles**

11

As a threshold matter, the Court must address the proper standard to apply at this stage of proceedings.[2] As explained above, the Government has appealed a detention order pursuant to 18 U.S.C. § 3145. Such an appeal is subject to *de novo* review, in which the Court must engage in a searching, "factbound inquiry" to determine danger to the community and/or risk of flight. *United States v. Sabol*, 534 F. Supp. 3d 58, 69 (D.D.C. 2021) (EGS) (citing *Munchel*, 991 F.3d at 1283) (cleaned up).

In determining whether Defendant is a danger to the community or a flight risk, the Court considers the Section 3142(g) factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g).

The Court shall consider these factors based upon the present record without holding an additional hearing. *See Sheffield*, 799 F. Supp. 2d at 20 (permitting district court to use in its analysis the evidence relied on by the magistrate judge); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 33–34 (D.D.C. 2005) (PLF) (taking into consideration the indictment, "the briefs and other papers submitted by the parties, the proceedings before [the magistrate judge], the [magistrate's] findings of fact and conclusions of law, and the evidence and proffers before [the court]"). Based on the current record, the Court concludes that clear and convincing evidence supports a finding that no condition or combination of conditions will "reasonably assure" the

---

[2] The Court notes that this is not the first time the Government sought relief from a magistrate judge's detention orders in this case. *See United States v. Nava*, 2023 WL 3158987 (D.D.C. Apr. 28, 2023) (CKK) (vacating detention orders as to Defendants Nava and Torres).

"safety of any other person and the community" or flight in advance of trial. Accordingly, the Court orders that Defendant remains detained pending trial. *See* 18 U.S.C. § 3142(e)(1).

### B. Nature and Circumstances of the Offense Charged

Turning to the Section 3142(g) factors, the Court first considers the "nature and circumstances of the offense charged" including whether the offense involves "a controlled substance." 18 U.S.C. § 3142(g)(1). In this case, a rebuttable presumption of detention applies because Defendant has been charged by indictment with serious violations of the Controlled Substances Act. *See id.* § 3142(e)(3)(A); *United States v. Brown*, 538 F. Supp. 3d 154, 165 (D.D.C. 2021) (RCL). Even the possession with intent to distribute "9.11 grams of fentanyl and .89 grams of powdered cocaine" triggers such a presumption. *Brown*, 538 F. Supp. 3d at 165–66. Here, the Government has presented convincing evidence that Defendant conspired to traffic, and did in fact traffic, in *tens of thousands* of grams of fentanyl. Mot. at 13–22. The Court must therefore presume that no condition or combination of conditions will reasonably assure Defendant's appearance as required or the safety of the community. To rebut this presumption, Defendant must "offer some credible evidence" that he will not endanger the community or flee if released. *United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (GMH).

The nature and circumstances of the offense here definitively weigh in favor of detention. Defendant is charged with conspiring to distribute and possess with intent to distribute 400 grams or more of a substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 846. This charge carries a ten-year mandatory minimum sentence, with a maximum of life. *Id.* § 841(b)(1)(A)(vi). "Moreover, this is not the case of an individual seller working alone." *Brown*, 538 F. Supp. 3d at 167. The Government alleges not just a conspiracy among the Defendants in this action, but vast distribution across the United States. Therefore, Defendant's "alleged

participation in the conspiracy charged thus strongly suggests that, if released, he would have the means to purchase and distribute narcotics and thereby endanger [not just] the D.C. community," but also communities throughout the United States. *See id.*

Moreover, each of the twelve previously apprehended defendants who had been indicted in the second superseding indictment have been ordered detained pending trial, including each of Defendant's California-based co-conspirators. *See United States v. Nava*, 2023 WL 3158987 (D.D.C. Apr. 28, 2023) (CKK) (ordering Defendants Nava and Torres detained pending trial). As for the third superseding indictment, the Government proffers that Defendant and others were arrested this month, four of whom have been ordered detained while the detention of the remaining defendants is currently pending. Mot. at 26–27. Releasing this particular defendant, who is a large-scale supplier of fentanyl in California, would be contrary to the other detention orders in effect. Therefore, the first factor weighs in favor of detention.

### C. Weight of the Evidence

The weight of the evidence against Defendant also favors continued pretrial detention. Law enforcement recovered a legion of messages and images from Defendant's social media account, reflecting that Defendant possessed and sold large quantities of counterfeit drugs (by the tens of thousands). *See id.* at 13–22. And, from a search of Defendant's residence, the Government recovered "[h]undreds of pills" in a duffle bag, with documents in Defendant's name found in the same location (the garage). *Id.* at 27. The weight of this evidence is strong. *See Brown*, 538 F. Supp. 3d at 168–69. Given the evidence to date, this factor weighs in favor of detention. *See United States v. Brockhoff*, 590 F. Supp. 3d 295, 304 (D.D.C. 2022) (CKK).

### D. History and Characteristics of the Defendant

Under the third Section 3142(g) factor, the Court must consider a defendant's "history and characteristics," including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3). Admittedly, Defendant's lack of a serious criminal record weighs against pretrial detention. *See Brockhoff*, 590 F. Supp. 3d at 305; *see also* Def.'s Opp'n at 7 (noting Defendant "has no prior juvenile or adult felony convictions"). Nevertheless, the Government proffers that an arrest was issued in June 2023 for Defendant for a domestic-violence offense, which was dismissed due to the victim's decision not to testify. Mot. at 28.

Defendant also appears to have family and community ties in California. *See* Def.'s Opp'n at 7 (stating Defendant is a "lifelong resident" in California and maintains strong family relations there). However, the Government proffers that Defendant also has family in Mexico according to the pretrial services report.[3] Mot. at 28. Therefore, the Government alleges that, given Defendant's "criminal exposure" and his "ties to individuals in a foreign country," Defendant has a "serious risk of flight and non-compliance." *Id.* Counsel for Defendant refutes the Government's allegations, stating that, based on the information available to counsel, Defendant does not have family in Mexico. Def.'s Opp'n at 8. And, to the extent there is a concern about the risk of flight, counsel Defendant is willing to surrender his passport to pretrial services prior to his release. *Id.* at 9. However, even counsel for Defendant notes that the pretrial report indicates that Defendant

---

[3] The Court understands that the pretrial report indicates some connection to Mexico. Although this document is supposedly unsealed, the Court has not been able to access it at this time.

"visit[s] Mexico every three years." Def.'s Opp'n at 8. Accordingly, based on the representations of the parties, Defendant must have some connections to Mexico, whether familial or not.

In all, this factor weighs in favor of detention. Defendant does not provide "credible evidence" sufficient to rebut the presumption, but rather a lack of available information. *See id.* at 8-9.

### E. The Nature and Seriousness of the Danger Posed by Defendant's Release

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Conspiring to distribute fentanyl presumptively renders a defendant a serious danger to the community. *See Brown*, 538 F. Supp. 3d at 170; *cf. also United States v. Bethea*, 763 F. Supp. 2d 50, 54 (D.D.C. 2011) (RCL) (narcotics trafficking generally). Particularly so here given the vast amount of drugs at issue. Defendant appears to have ties to Mexico, and the statutory penalties Defendant faces provide him with a strong incentive to flee. More generally, "the lethality of fentanyl and scourge of . . . opioids on this community [and communities around the country] further demonstrate the serious danger Defendant's release could pose." *United States v. Bolivar*, 455 F. Supp. 3d 1165, 1171 (D.N.M. 2020).

Defendant argues that a suitable third-party custodian (such as Defendant's mother or girlfriend) can mitigate the Court's concern for the safety of the community. *See* Def.'s Opp'n at 8. However, the Court's concern regarding the safety of the community is not alleviated, as

Defendant also requests to continue to work as a commercial truck driver, thereby giving him the means to flee. Therefore, this factor also weighs in favor of detention.

\* \* \*

All in all, even if Defendant could rebut the presumption of detention, the Court finds that no set of conditions can assure his presence at trial or address the threat of danger he poses to communities in the District of Columbia or Los Angeles. The Government has shown that Defendant has a strong incentive to flee given the seriousness of the charges, the apparent weight of the evidence, and Defendant's ties to Mexico. Therefore, the Court concludes that the Section 3142 factors require pretrial detention.

### IV.  CONCLUSION

The record as a whole establishes, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community if Defendant was released pending trial. 18 U.S.C. § 3142(e)(1). As such, the Court **GRANTS** the Government's [156] Emergency Motion for *De Novo* Review of Magistrate's Release Order and Request to Stay Defendants' Release Pending *De Novo* Review, **VACATES** the prior release order, and orders Defendant held without bond pending trial and transported to the District of Columbia. An appropriate order accompanies this memorandum opinion.

**Dated:** November 20, 2023

　　　　　　　　　　　　　　　　　　　　　　／s／ Colleen Kollar-Kotelly
COLLEEN KOLLAR-KOTELLY
United States District Judge